United States District Court
Southern District of Texas
**ENTERED**
April 10, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANTHONY HYNES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-17-2419 |
| | § | |
| BRASIL LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION GRANTING THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Anthony Hynes sued Brasil LLC, alleging unlawful race discrimination by a place of public accommodation, in violation of Title II of the Civil Rights Act, 42 U.S.C. § 2000a, and alleging a denial of the equal right to make and enforce contracts, in violation of § 1981.[1] Hynes sought damages, attorneys' fees, and injunctive relief. After discovery, Brasil moved for summary judgment. (Docket Entry No. 14). Hynes did not respond.

Based on a careful review of the motion, the record evidence, and the applicable law, Brasil's motion for summary judgment is granted and final judgment is entered by separate order. The reasons are discussed below.

**I.  Background**

This lawsuit arises from an incident in July 2017. Hynes and his friend, Nashunda Baskin, had made plans to meet at Café Brasil in Montrose to study for the bar exam. Hynes and Baskin knew each other from law school and had studied together before, including the week before at Café

---

[1] Brasil notes that Hynes fails to specify the statute under which he asserts this cause of action, but it must be based on 42 U.S.C. § 1981. The complaint uses the language from the statute and asserts a claim for attorneys' fees under 42 U.S.C. § 1988.

1

Brasil.

Baskin arrived first, around 1:00 p.m. Customers at Café Brasil generally place their orders at the counter before finding a seat. Baskin sat down at a table meant for four or six customers, without ordering. The owner and manager, Daniel Fergus approached Baskin and asked her to move to a smaller table, explaining that he needed the larger table for groups during the busy lunch hour. Baskin moved to a small table and then to a second small table closer to a power outlet. Fergus asked Baskin several times whether she wanted to order any food, but she declined.

Baskin occupied the table for about an hour before Hynes arrived. Hynes had been to Café Brasil about 50 times before, all without incident. When he arrived, Hynes passed the counter where customers order food and put his belongings down on a table intended for four or six customers, telling Baskin to move to the larger table with him. When Hynes asked Baskin why she was sitting at the smaller table, she explained that Fergus had asked her to move there. When Fergus saw Hynes about to sit at a large, four-top table without ordering, he approached Hynes and asked, "Can I help you?" Hynes replied, "No, I'm just getting here. I'll probably order at the bar." (Docket Entry Nos. 14-1 at 8, 14-2). Fergus explained to Hynes, as he had to Baskin, that the lunch hour was the busiest time of the day for the café and that he did not allow people to sit at large tables unless they needed the seats. Hynes asked Fergus why, pointing to another customer in the café who was sitting at a large table alone. Fergus replied that the woman had ordered food and had been one of a party of four. Fergus then asked Hynes what he was going to order, and Hynes said "possibly coffee." (Docket Entry No. 14-1 at 9). Fergus responded that he did not "appreciate that kind of business here." (*Id.*). Hynes testified that at the time, he did not take that as a racial comment, but he later understood it to mean that Fergus did not appreciate African-American business in his café.

Hynes told Fergus that he did not understand why he was being singled out. Fergus replied, "Well, if you don't want to eat here, you don't have to and I don't appreciate the business so you can leave." (*Id.*). Hynes stayed, but he refused to move to a smaller table and neither he nor Baskin ordered food.

At that point, Baskin told Hynes that they should leave and headed toward the exit. Hynes approached Fergus, who had returned to work behind the counter, interrupting his conversation with a customer. Hynes demanded that Fergus provide the name of the owner and manager. Fergus told Hynes that he needed to leave, but Hynes refused until Fergus gave him that information. The exchange continued for several minutes, during which Hynes was "visibly upset" and "shaking." (Docket Entry No. 14-1 at 10). Fergus finally told Hynes that he was going to call the police if Hynes did not leave. Hynes replied, "Sir, if you're using that as intimidation, I've done nothing wrong. Please feel free to call the police, if you have the authority to do so, but I have done nothing wrong." (Docket Entry No. 14-1 at 34). At one point, Fergus tried to defuse the situation by extending his hand to shake Hynes's hand and introducing himself as the owner and manager. Hynes refused to shake hands Fergus also suggested that they take the conversation outside, but Hynes again refused. Hynes told Fergus that he was an attorney and that Hynes would sue Fergus in federal court. Hynes finally left Café Brasil. Fergus told him to come back again and to have a nice day.

Hynes filed this suit, asserting claims for race discrimination and seeking damages and injunctive relief. (Docket Entry No. 1). Café Brasil has moved for summary judgment, (Docket Entry No. 14), but Hynes did not respond.

The summary judgment record consists of:

- Anthony Hynes's deposition, (Docket Entry No. 14-1);

- an affidavit from Daniel Fergus, (Docket Entry No. 14-2); and

- Nashunda Baskin's deposition, (Docket Entry No. 14-3).

## II. The Legal Standard

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (citations omitted); see also FED. R. CIV. P. 56(a). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.'" *Brandon v. Sage Corp.*, 808 F.3d 266, 269-70 (5th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial.'" *Kim v. Hospira, Inc.*, 709 Fed. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters.*, Inc., 783 F.3d 527, 536 (5th Cir. 2015)). While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n. 16 (5th Cir. 1994)). A fact is material if "its resolution could affect the

4

outcome of the actions." *Aly v. City of Lake Jackson*, 605 Fed. App'x 260, 262 (5th Cir. 2015) (citing *Burrell v. Dr. Pepper/Seven UP Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007)). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503 (5th Cir. 2014).

"When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Bailey v. E. Baton Rouge Parish Prison*, 663 Fed. App'x 328, 331 (5th Cir. 2016) (quoting *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010)). The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, LLC*, 642 Fed. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 866 F.3d 698, 702 (5th Cir. 2017).

**III. Analysis**

    **A. Injunctive Relief Under § 2000a**

Title II of the Civil Rights Act provides that:

> All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

42 U.S.C. § 2000a(a). The statute applies to places of public accommodation, including restaurants. §2000a(b). Café Brasil is a private business and a place of public accommodation subject to federal anti-discrimination laws.

The statute authorizes a "a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved." 42 U.S.C. § 2000a-3(a); *see also Bass v. Parkwood Hosp.*, 180 F.3d 234, 244 (5th Cir. 1999) ("Unlike many other civil rights statutes, however, 42 U.S.C. § 2000a-3 allows only for prospective relief and does not authorize damage awards."). Because of the "scant case law under Title II," courts "frequently borrow Title VII authority" when analyzing Title II claims. *Fahim v. Marriott Hotel Servs, Inc.*, 551 F.3d 344, 349 (5th Cir. 2008). As with Title VII, claims under Title II may be proven by direct or circumstantial evidence. *See, e.g.*, *McLaurin v. Waffle House, Inc.*, 178 F. Supp. 3d 536, 545 (S.D. Tex. 2016) (citing *Fahim*, 551 F.3d at 349). There is no direct evidence of race discrimination in this case. The undisputed record evidence shows that Fergus did not comment on Hynes's race or national origin, or use any racial slurs, epithets, comments, or gestures. (Docket Entry No. 14-2 at 4–5; Docket Entry No. 14-3 at 12).

In the absence of direct evidence, the *McDonnell Douglas* burden-shifting framework applies. *Fahim*, 551 F.3d at 349 (collecting cases and approving of the Title VII burden-shifting framework to analyze claims under Title II). The *McDonnell Douglas* framework places the initial burden on the plaintiff to make a *prima facie* showing of discrimination, which shifts the burden to the defendant to show a legitimate, nondiscriminatory reason for the alleged discriminatory conduct. *McLaurin*, 178 F. Supp. 3d at 545. If the defendant articulates a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the stated reason is pretext for discrimination or that race

6

was a motivating factor in the conduct. *Id.* A *prima facie* showing requires a plaintiff to show that: (1) he is a member of a protected group; (2) he attempted to enjoy the benefits of the services of a public accommodation; (3) he was denied those services; and (4) was treated less favorably than similarly situated persons outside of the protected class. *Id.* (citing *Fahim*, 551 F.3d at 350). The Fifth Circuit has explained that "some courts have applied a test in which the fourth element is modified. The fourth element in that modified test asks whether (a) the services were made available to similarly situated persons outside the plaintiff's protected class or (b) the plaintiff 'received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory.'" *Fahim*, 551 F.3d at 350, n.2 (citations omitted). This modified test is typically applied in cases involving restaurants, because plaintiffs "are often unable to point to similarly situated persons outside of their protected class who were treated differently." *McLaurin*, 178 F. Supp. 3d at 546 (citations omitted) (noting that the Fifth Circuit has not expressly approved of this test).

Café Brasil argues that Hynes fails to make a *prima facie* showing of discrimination because there is no evidence that he was denied services or treated less favorably than similarly situated persons outside his protected group. The undisputed record evidence shows that Hynes and Baskin were asked to move to a smaller table at Café Brasil rather than occupying a table meant for four or six people, during the lunch hour, without ordering any food. Hynes was not denied entry into Café Brasil or denied service. To the contrary, he was repeatedly offered service and asked if he would like to order anything. Only when he declined to order anything but coffee, or to move to a smaller table, and insisted on using a table intended for a large group during the busy lunch hour, was he asked to leave. (Docket Entry No. 14-1 at 7, 9, 10; Docket Entry No. 14-2 at 3–4).

7

The exchange between Hynes and Fergus escalated when Hynes refused to leave without the information about the owner or manager. (Docket Entry No. 14-1 at 10; Docket Entry No. 14-2 at 4). Hynes does not point to or submit any evidence showing that other similarly situated persons—individuals who insisted on sitting at a large table for long periods during the restaurant's busiest time, without ordering anything,—outside his protected class were treated more favorably.

Even if the court applies the modified test and asks whether Hynes "received services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory," *McLaurin*, 178 F. Supp. 3d at 546, Café Brasil is still entitled to judgment as a matter of law. The undisputed record evidence shows that Fergus repeatedly invited Baskin and Hynes to order and explained why he wanted them to move to a smaller table. When Hynes still refused to sit at a smaller table or order anything, Fergus asked him to leave. Only when Hynes repeatedly refused to leave, making him a trespasser, did Fergus threaten to call the police. Nothing in the record evidence shows that Fergus acted in a "markedly hostile manner" until Hynes had repeatedly refused requests to follow restaurant policy, had interrupted Fergus in a conversation with another customer, and had himself become hostile. No evidence shows that Fergus acted in an "objectively discriminatory" way. Hynes has not made a *prima facie* showing of discrimination.

Even if Hynes had shown a *prima facie* case, shifting the burden to Café Brasil, it has shown that it had a legitimate, nondiscriminatory reason for Fergus's conduct. Fergus repeatedly explained to Baskin and Hynes that he did not want them occupying a large table meant for four to six people at lunch, especially without ordering anything. When Hynes refused to move from a large to a small table and refused to order, Fergus asked Hynes to leave. When Hynes refused to leave and interrupted Fergus's conversation with another customer, Fergus again asked Hynes to leave. He

8

refused to do so.  This satisfies Café Brasil's burden of showing a legitimate, nondiscriminatory reason.  The burden then shifts to Hynes to show a factual dispute as to pretext.  The record shows no evidence raising a factual dispute as to whether, or supporting an inference that, Fergus's conduct toward Hynes or asking him to leave was a pretext for discrimination.  Café Brasil is entitled to judgment as a matter of law on Hynes's claim for injunctive relief under § 2000a-3(a).

B.     **Damages Under § 1981**

Title 42 U.S.C. § 1981(a) provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and extractions of every kind, and to no other.

"Section 1981 does not provide a general cause of action for race discrimination," but instead "prohibits intentional race discrimination with respect to certain enumerated activities." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003).  "Key to a race discrimination claim under § 1981 is proof of discriminatory intent." *Bryant v. City of Houston*, No. H-13-2229, 2016 U.S. Dist. LEXIS 135660, at *15 (S.D. Tex. July 28, 2016) (citing *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 318 (5th Cir. 2001)).  Such intent may be shown through either direct or circumstantial evidence. *Id.*

A § 1981 claim is analyzed the same way as a Title II or Title VII claim.  To make a *prima facie* showing of race discrimination under § 1981, the plaintiff must show that: (1) "the plaintiff 'is a member of a racial minority; (2) the defendant had an intent to discrimination on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute.'"

9

*Id.* (quoting *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997)). A *prima facie* showing shifts the burden to the defendant to show a legitimate, nondiscriminatory reason for the conduct, which in turn shifts the burden back to the plaintiff to demonstrate that a discriminatory reason was a motivating factor or that the defendant's reason is "unworthy of credence." *Id.* at *16 (quoting *Bright v. G B Bioscience, Inc.*, 305 Fed. App'x 197, 201 (5th Cir. 2008)).

The record shows no evidence, direct or circumstantial, supporting a *prima facie* showing of discrimination, for the reasons discussed above. Hynes testified that he had visited Café Brasil more than 50 times and had never been denied entry or asked to leave before the July 2017 incident. (Docket Entry No. 14-1 at 4). He testified that he had never before felt discriminated against at Café Brasil, had never seen any customer mistreated or discriminated against on the basis of race, and had not seen or heard any racial slurs, epithets, comments, gestures, or other discriminatory conduct. (*Id.*).

Café Brasil also argues that Hynes had no contractual interest that was impaired. "To establish a deprivation of § 1981 rights in the retail context, the plaintiff must demonstrate 'the loss of an actual, not speculative or prospective, contract interest.'" *Arguello*, 330 F.3d at 358 (quoting *Morris v. Dillard Dep't Stores, Inc*, 277 F.3d 743, 751–52 (5th Cir. 2001)). "[T]he plaintiff 'must offer evidence of some tangible attempt to contract' that in some way was 'thwarted' by the defendant." *Id.* (quoting *Morris*, 277 F.3d at 752). In *Arguello*, the court held that the plaintiff failed to show an actual interference with the right to contract because he voluntarily abandoned his purchase because of a cashier's poor treatment of the plaintiff's daughter, and the cashier did not actually interfere with the purchase. *Id.* Fergus similarly did not interfere with Hynes's patronage of the restaurant. Fergus repeatedly encouraged Hynes to sit at a table and order. Hynes's choice

was to refuse to move to the smaller table as requested, or to order food. Fergus did not interfere with Hynes's rights to engage in the activities protected by § 1981.

The *Arguello* court also noted that the restaurant context is different from the retail context because restaurant customers contract not only to purchase food, but enter into a contractual relationship that continues over the course of the meal. *Id.* at 360–61. Hynes did not seek to enter into any contractual relationship with Café Brasil because he refused to patronize the restaurant's business by ordering food. Instead, he sought to create a relationship or service that Café Brasil does not offer—that of a library or study area. The record shows that Hynes did not seek a contractual right that was impaired.

## VI. Conclusion

Café Brasil's motion for summary judgment, (Docket Entry No. 14), is granted. Final judgment is entered by separate order.

SIGNED on April 10, 2018, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge